IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TRADIMPEX EGYPT CO.,  :
an Egyptian Company  :
:
    PLAINTIFF,  :
:
v.  : C.A. No. 10-757-LPS
:
BIOMUNE CO. d/b/a CEVA BIOMUNE, a :
Delaware Corporation  :
:
    DEFENDANTS.  :

---

Scott E. Chambers, Esquire, and Erin K. Fitzgerald, Esquire., Schmittinger Rodriguez, P.A. and Todd Gallinger, Esquire. Attorneys for Plaintiff.

William F. Taylor, Jr., Esquire, McCarter & English, LLP, and Russell J. Keller, Esquire, and Misty Cooper Watt, Esquire, Stinson Morrison Hecker, LLP. Attorneys for Defendants

---

**MEMORANDUM OPINION**

April 14, 2011
Wilmington, DE

[signature]
**Stark, District Judge:**

I. **Background**

This case involves a dispute over an agency and distribution agreement (the "Agreement") between the Plaintiff, Tradimpex Egypt Company (hereinafter "Tradimpex" or "Plaintiff") and Defendant, Biomune Company (hereinafter "Biomune" or "Defendant"). The parties entered into the Agreement in 2001 and, pursuant to it, Tradimpex became Biomune's agent for the importation and distribution of Biomune's products in Egypt. In 2009, Biomune reduced the list of products that Tradimpex would distribute and designated Axis Agency Services, Ltd. (hereinafter "Axis") as Biomune's agent for importing and distributing Biomune products in Egypt. In the instant action, Tradimpex alleges Biomune breached by designating Axis as an agent for Biomune.[1]

Prior to commencing this action, Tradimpex filed multiple lawsuits and administrative appeals in Egypt related to the Agreement. Biomune characterizes the prior actions in Egypt as follows:

> ... Plaintiff first attempted to initiate criminal actions in Egypt against Axis. Those efforts failed. Plaintiff then challenged the appointment of Axis as Biomune's agent by submitting a complaint to the Egyptian Ministry of Agriculture. The Ministry of Agriculture rejected Plaintiff's position and recognized Axis' right to be the sole distributor for all Biomune's products except the three assigned to Plaintiff. Plaintiff also filed two actions against Biomune's parent and sister corporations concerning the very Agreement at issue here.

---

[1] Biomune has filed a counterclaim, alleging that Tradimpex violated the Agreement by failing to timely pay invoices and make product returns. (D.I.16 Counterclaim ¶¶ 14-16) Biomune intends to withdraw its counterclaim if the Court grants its motion to dismiss the instant action. (D.I. 19 at 2 n.1)

1

(D.I. 10 at 1)

Tradimpex's description of the nature and status of the actions in Egypt is similar, although it omits the criminal action and provides more detail on the two actions against Biomune's related entities:

> ... The first [action] is an administrative action before the General Authority of Veterinary Services, a division of the Egyptian Ministry of Agriculture. This case is for injunctive relief to prevent Axis ... from importing Biomune products .... Biomune is not a party to this Egyptian lawsuit and Tradimpex is not seeking compensation from Biomune therein.
>
> The second Egyptian case is an accounting matter between Tradimpex and Ceva Sante Animale, S.A. This case is to determine the value of credits granted to Tradimpex offset by unpaid invoices issued by Ceva Sante Animale, S.A. Biomune is not a party to this lawsuit and Tradimpex is not seeking compensation from Biomune therein. . . .
>
> The third case brought in Egypt is a private lawsuit against Biomune. It is seeking damages for their breach and cancellation of the ... [A]greement, similar to the present case. Biomune has not yet appeared nor been served in that case.

(D.I. 17 at 4) (internal citations omitted)

Pending before the Court is Biomune's Motion to Dismiss or Transfer Plaintiff's Complaint (hereinafter "Motion"). (D.I. 9) Biomune contends that this action should be dismissed under the doctrine of *forum non conveniens*, which would allow the parties to resolve their disputes through the Egyptian actions. In the alternative, Biomune asks the Court to transfer this action to the District of Kansas. For the reasons discussed below, the Court will

deny the Motion.

II. *Forum Non Conveniens*

As the Third Circuit has explained:

> The Supreme Court has directed that a plaintiff's choice of forum should rarely be disturbed. However, a district court may dismiss an action based on *forum non conveniens* if an alternative forum has jurisdiction to hear the case, and trial in the plaintiff's chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.

*Delta Air Lines, Inc. v. Chimet, S.p.A.* 619 F.3d 288, 294-95 (3d Cir. 2010) (internal quotation marks and citations omitted). In applying the doctrine of *forum non conveniens*, courts examine: (1) the existence and adequacy of an alternative forum for the litigation; (2) the amount of deference that should be accorded to the plaintiff's choice of forum; (3) the convenience of the parties, also known as "private interest factors;" and (4) the interests of the forum, also known as "public interest factors." *See id.* at 295. The burden of establishing that these factors favor dismissal rests with the party seeking such relief. *See id.* A defendant seeking dismissal on *forum non conveniens* grounds must show that the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum." *Windt v. Qwest Communications Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008).

A. **Adequacy of Egyptian Forum**

Defendant argues that Egypt is an adequate alternative forum, which offers sufficient judicial remedies. To qualify as an adequate alternative, the alternative jurisdiction must offer

3

reasonable remedies and the defendant must be amenable to process within it. *See Brunswick GmbH v. Bowling Switzerland, Inc.*, 2008 WL 2795936, at *2 (D. Del. July 18, 2008). Here, according to Defendants, Egypt provides remedies for breach of contract and Defendant consents to jurisdiction in Egypt.

As Defendant observes, other courts, at other times, have previously held that, at least for certain cases, Egypt is an adequate alternative forum. *See, e.g., Rivera v. Hewlett Packard Corp.*, 95 Fed. Appx. 241 (9th Cir. Apr. 16, 2004); *Jackson v. American Univ.*, 52 Fed. Appx. 518 (D.C. Cir. Dec. 13, 2002); *Dabbous v. American Express Co.*, 2009 WL 1403930, at *8-9 (S.D.N.Y. May 8, 2009). Additionally, Defendant emphasizes the several legal actions Plaintiff has already initiated in Egypt. In Defendant's view, Plaintiff's initiation of these Egyptian actions indicates that "Plaintiff has tacitly acknowledged that the Egyptian system can handle claims in a sufficiently expeditious manner." (D.I. 19 at 7; *see also* D.I. 10 at 8)

The Court disagrees. Initially, the Court takes judicial notice of the recent revolutionary events that have transpired in Egypt – including the resignation of longtime President Hosni Mubarak in January 2011 and the dissolution of Egypt's constitution and parliament in February 2011.[2] Under these uncertain circumstances, the Court is unwilling to assume that the prior adequacy of the Egyptian courts necessarily exists today.

Also, the fact that Plaintiff initiated litigation against Defendant in Egypt prior to the instant action does not, *per se*, indicate that Plaintiff still views Egypt as providing an adequate

---

[2]*See, e.g.*, Neil MacFarquar, *Hosni Mubarak's Shadow Still Falls Over Egypt*, N.Y. Times, Mar. 25, 2011; Neil MacFarquar, *Egyptian Voters Approve Constitutional Changes*, N.Y. Times, Mar., 20, 2011; Fed. R. Civ. Proc. 201; *see also generally* Tr. Feb. 7, 2011 teleconference (D.I. 24) at 4-5 (Court and counsel referencing ongoing events in Egypt).

4

forum. It is possible that Plaintiff filed the instant action because it has come to believe that Egypt does not provide an adequate forum (and not just because Plaintiff's early results in Egypt may not have been to Plaintiff's liking). *See generally Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194-95 (9th Cir. 1991) (stating that parallel proceeding in foreign jurisdiction does not alone constitute "exceptional circumstances" to justify abdication of federal jurisdiction). Moreover, there appears to be no already pending Egyptian action in which all of the following are present: Biomune has been served, Plaintiff is seeking the same or similar relief for breach of contract as Plaintiff is seeking here, and the action has advanced materially further than has the instant case.

In sum, the Court is unpersuaded that, at this time, Egypt provides an adequate forum. Dismissal under the doctrine of *forum non conveniens* would be inappropriate. Nonetheless, the Court will briefly address the remaining factors relevant to this analysis.

### B. Deference to Plaintiff's Choice of Forum

Generally, a domestic plaintiff's choice of a U.S. forum should be entitled to deference absent a showing that the balance of the relevant factors tip "strongly in favor of the defendant." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Conversely, "when a plaintiff is foreign . . . this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Windt v. Qwest Commc'n Int'l, Inc.*, 529 F. 3d 183, 190 (3d Cir. 2008). In weighing a plaintiff's choice of forum, courts consider "the particular circumstances of the litigation," including the parties' connection with the forum in question and pending litigation in a foreign forum. *See id.* at 191.

5

Here, Plaintiff has chosen Delaware as its preferred forum for litigating its breach of contract dispute with Defendant. Regardless of the precise amount of weight given to this preference, plainly this factor disfavors dismissal.

### C. Private and Public Interest Factors

In conducting a private interest analysis, courts typically consider: (1) the ease of access to evidence; (2) the potential for compulsory attendance for uncooperative witnesses; (3) the cost of procuring cooperative witnesses; (4) the proximity to any pertinent locations; and (5) the miscellaneous practical advantages which make trial easier and less expensive. *See Windt*, 529 F.3d at 189. As for public interest factors, courts typically consider: (1) court congestion; (2) the local interest in deciding local controversies; (3) the benefit of litigating cases within a forum that traditionally applies the applicable law; (4) the avoidance of unnecessary problems in law application, such as conflicts of laws; and (5) the unfairness of burdening citizens with jury duty. *See id.* at 189.

Naturally, Tradimpex argues that these private and public factors weigh in favor of Delaware over Egypt. Biomune, of course, disagrees. Essentially the same private and public interests must be considered in the context of Biomune's request to transfer this case to Kansas, and the Court will defer specific discussion of them until addressing that alternative request. Here, all that need be said is that consideration of the private and public interest factors does not establish "oppressiveness and vexation" to Biomune "out of all proportion" to Tradimpex's convenience or that Delaware is an inappropriate forum due to any "administrative and legal problems."

Accordingly, the Court will deny Defendant's Motion to the extent it seeks dismissal of

6

the instant action under the doctrine of *forum non conveniens*.

### III. Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

In the alternative, Biomune seeks transfer of this case to the District of Kansas, pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden of demonstrating that such a transfer is appropriate rests with the moving party. Generally, transfer is appropriate when:

(1) the case could have been brought in the alternative court originally; (2) the other court is more convenient to the parties; (3) the other court is more convenient to witnesses; and (4) a transfer would be in the interests of justice. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995). This requires consideration of both private and public interest factors. *See id.*

In resolving a motion to transfer, courts analyze "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.* at 879. In undertaking this analysis, it bears emphasis that "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879. Hence, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted). "Therefore, defendants [seeking transfer] must prove that litigating in Delaware would pose a unique or unusual burden on their operations." *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted).

## A. Private Interest Factors

The private factors to consider include: (1) the plaintiff's choice of forum; (2) the defendant's forum preference; (3) the location of the operative events; (4) the convenience of the parties; (5) the convenience for the witnesses; and (6) the location of relevant evidence. *See L'Athene, Inc.* 570 F. Supp. 2d at 592. Defendant argues that Plaintiff's lack of connection to Delaware, the little deference accorded to Plaintiff's forum selection, the increased convenience for Plaintiff of trial in Kansas, and lesser expense of trial, all counsel that the Court should transfer this case to the District of Kansas. Additionally, Defendant contends that if any of operative events relevant to the instant action occurred in the United States, they occurred in Kansas, where Defendant's business is headquartered. Similarly, if any witnesses and evidence are located anywhere in the U.S., it is in Kansas, not in Delaware.

Plaintiff responds by highlighting the "paramount consideration" owed to Plaintiff's choice of forum, as well as the Defendant's heavy burden to overcome it. *See id.* at 594. Plaintiff argues that the inconvenience to Defendant having to litigate in Delaware is minimal, considering Defendant's global operations. Certainly, in Plaintiff's view, requiring a global company like Defendant to litigate in Delaware rather than Kansas does not "pose a unique or unusual burden on [its] operations." *Wesley-Jessen Corp.*, 157 F.R.D. at 218. Additionally, Plaintiff points to technology (such as the internet, computer programs, and video-conferencing), which merits giving little weight to the fact that evidence and witnesses may be located in Kansas. *See Nihon Tsushin Kabushkiki Kaisha v. Davidson*, 595 F.Supp.2d 363 (D. Del. 2009); *Wesley-Jensen Corp.*, 157 F.R.D. at 218.

The Court finds that the only private factors that favor Delaware are that it is Plaintiff's choice of forum and that Defendant is incorporated here. These are, of course, important factors and are given substantial weight. The other private factors favor Kansas. To the extent operative events occurred in the U.S. (such as Defendant's decisions about the Agreement and whether to do business in Egypt with Axis), they occurred in Kansas, not Delaware. The record also supports Defendant's contention regarding witnesses: "Witnesses from Axis, Ceva Egypt, and Plaintiff generally are located in Egypt. Witnesses from Biomune and Ceva France generally are located in Kansas or France. . . . No potential witness is located in Delaware." (D.I. 10 at 11) (internal citations omitted) Therefore, as Defendant points out, "[m]ore witnesses will have to travel and more expenses will be incurred if this case proceeds in Delaware instead of Kansas." (D.I. 19 at 10) While Plaintiff is correct that technology makes the physical location of documents relatively unimportant, the fact remains that neither party has identified any relevant documents that are located in Delaware, while some such documents are evidently located in Kansas.

Weighing all of these private interest factors, the Court finds that they slightly favor transfer.

### B. Public Interest Factors

The public interest factors to be considered include: (1) the enforceablity of the judgment; (2) practical considerations to make trial expeditious; (3) the administrative difficulty resulting from court congestion; (4) the local interest in deciding local controversies; and (5) familiarity of the judge with the applicable state law. *See L'Athene*, 570 F. Supp. 2d at 592. Defendant asserts

that trial in Kansas would be easier, more expeditious, less expensive, and would likely happen more quickly, as a result of the District of Kansas' relatively less congested docket. Plaintiff argues that judgments are equally enforceable in Delaware and Kansas and that none of the other public factors favor Defendant. In Plaintiff's view, the difference between the court congestion in Delaware and Kansas is negligible.

The Court concludes that the public factors favor neither Delaware nor Kansas. The enforceability of the judgment is the same in both courts. Although the District of Delaware is a very busy District, so, too, is the District of Kansas, and there is no reason to conclude that the time to trial (or length of trial) will be materially different in one court or the other. Moreover, while Kansas has a local interest given the parties' determination in the Agreement that Kansas law should govern their disputes, and Kansas judges are undoubtedly more familiar with Kansas law than are Delaware judges, Delaware, too, has a local interest, in that one of its citizens – Biomune, a Delaware corporation – is alleged to have breached a contract. Additionally, to the extent relevant, the burden on a Delaware jury is no greater than the burden would be on jurors elsewhere.

### C. Weighing the Interests

As noted above, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted). "Therefore, defendants [seeking transfer] must prove that litigating in Delaware would pose a unique or unusual burden on their operations." *L'Athene, Inc.*, 570 F. Supp 2d at 592 (internal citations and quotation marks omitted). Given the Court's finding that the private interest factors only slightly favor Kansas, and the public interest factors do not favor either

Kansas or Delaware, it follows that Defendant has failed to meet its burden. Accordingly, the Court will deny Defendant's Motion to transfer this action to the District of Kansas.

## V. **Conclusion**

For the reasons set forth above, Defendant's Motion is DENIED. An appropriate Order follows.